FILED
United States Court of Appeals
Tenth Circuit

April 2, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　v.

ELVIRA VIDAL,

　　　　Defendant - Appellant.

No. 07-2026
District of New Mexico
(D.C. No. CR-05-2266-JC)

**ORDER**

Before **LUCERO**, **McWILLIAMS** and **McCONNELL**, Circuit Judges.

　　　　Appellant's "Petition for Panel Rehearing and Petition for En Banc Review" was transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the petition for rehearing en banc is denied.

　　　　However, the petition for panel rehearing is granted to the limited extent of amending the Opinion filed on February 13, 2009.

The attached revised Opinion is reissued nunc pro tunc.  Additional petitions for rehearing in this matter will not be permitted.

Entered for the Court,


ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

February 13, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ELVIRA VIDAL,

Defendant-Appellant.

No. 07-2026

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 05-2266-JC)**

---

David N. Williams, Assistant United States Attorney, Albuquerque, New Mexico
(Gregory J. Fouratt, United States Attorney, with him on the briefs) for Plaintiff-
Appellee.

Susan B. Dunleavy, Assistant Federal Public Defender, Albuquerque, New
Mexico, for Defendant-Appellant.

---

Before **LUCERO**, **McWILLIAMS** and **McCONNELL**, Circuit Judges,

---

**McCONNELL**, Circuit Judge.

---

Defendant-Appellant Elvira Vidal was charged with possession with the

intent to distribute more than 500 grams of methamphetamine. Though she

denied having the requisite intent, she pled guilty to the charge "because [the police] found the drugs." We are now called on to determine whether Ms. Vidal's guilty plea was knowing and intelligent in light of these facts.

## I. Background

On September 28, 2005, Ms. Vidal was traveling east on I-40 toward Albuquerque in a car driven by Mr. Juan Lopez-Gamez. A New Mexico State Police officer pulled over the vehicle because Ms. Vidal was not wearing a seat belt. When the officer approached the passenger side of the car, he noticed that both Ms. Vidal's and Mr. Lopez-Gamez's hands were shaking. He also observed that all of the air vents in the car had air fresheners attached to them, and that a strong fruity odor was emanating from the inside of the car.

The officer asked Ms. Vidal to accompany him to his patrol car, where he issued her a ticket for not wearing her seat belt. Ms. Vidal told the officer that she and her boyfriend were going to a casino, which she could not name, that was owned by a friend of theirs named Aldolfo. When the officer noticed that the owner of the car was not Mr. Lopez-Gamez, but rather Arnoldo Garcia, he proceeded to ask questions about who owned the car. Ms. Vidal, still shaking, said they had borrowed the car from a friend named Garcia, but she did not know his telephone number.

The officer then asked Mr. Lopez-Gamez similar questions. Mr. Lopez-Gamez indicated that he and Ms. Vidal were going to the Route 66 casino, that

the vehicle belonged to the brother of his friend, Pedro, and that he did not know the friend's telephone number but Ms. Vidal did.

Both Ms. Vidal and Mr. Lopez-Gamez told the officer that their vehicle did not contain any weapons, drugs, or large amounts of cash, and they gave him permission to search it. The officer found 553.7 grams of methamphetamine in a compartment under the passenger side dashboard. Upon the officer's discovery of the drugs, Ms. Vidal said that she and Mr. Lopez-Gamez had borrowed the car solely to go to a casino, but not any particular casino. She said she just wanted to try her luck for a few days and had no idea methamphetamine was in the car. Mr. Lopez-Gamez disagreed. He said that Ms. Vidal was responsible, and that she had arranged for the drugs to be delivered to a particular casino on Albuquerque's west side. When he discovered how much methamphetamine was in the car, he said, "They lied to us. It was not supposed to be that much."

Ms. Vidal and Mr. Lopez-Gamez were charged with possession with intent to distribute more than 500 grams of methamphetamine. Ms. Vidal faced a mandatory minimum of ten years in prison if convicted, but, as a first offender, she was eligible for safety valve sentencing if she provided truthful information to law enforcement about the crime. This would take her sentence below the mandatory ten years. Ms. Vidal entered into a plea agreement in which she not only admitted her guilt but gave up the right to appeal her sentence and conviction. She was informed of the requirement that she provide truthful

-3-

information about the offense before she would be entitled to the safety valve provision. Aplt. Br. 5. As part of the written plea agreement, Ms. Vidal admitted to the following: "On or about September 28, 2005, Defendant Elvira Vidal and Co-defendant Juan Lopez-Gamez possessed with the intent to distribute more than 500 grams of a substance containing a detectable amount of methamphetamine . . . ."

Through an interpreter, the magistrate judge asked Ms. Vidal, a Spanish speaker, whether she understood the proceedings and, *inter alia*, whether the plea was entered of her own free will because she was guilty. Ms. Vidal responded affirmatively. *Id.* at 6. She agreed that she understood all of her trial rights and her right to appeal the conviction and sentence. She also agreed that she understood her guilty plea gave up "most of these rights." *Id.*

Ms. Vidal further agreed that the government could prove that she had transported the drugs with the intent to distribute; however, she maintained in her conversation with the magistrate judge that she lacked both knowledge of the drugs and the intent to distribute them:

> **THE COURT:** And you knew the drugs were in the car?
> **MS. VIDAL:** No, sir.
> **THE COURT:** Well, did you possess the drugs with the intent to distribute them?
> **MS. VIDAL:** I'm pleading guilty because they found them in the car.
> **THE COURT:** Well, that isn't sufficient. Before you can be found guilty, there has to be evidence that you possessed these drugs and that you intended to distribute them. Do you understand what I have said?
> **MS. VIDAL:** Yes, sir. I understand.

**THE COURT:** I will ask you the question again. Did you possess the drugs that were in the car with the intent to distribute them?
**MS. VIDAL:** No. It's just–I'm pleading guilty because they found the drugs. But I didn't know about that.
**THE COURT:** . . . *[The government's] evidence indicated that you intended to possess* and did possess these drugs with the *intent to distribute* them. You told me that [the government] could prove that. Is that correct?
**MS. VIDAL:** Yes, Your Honor.
. . .
**THE COURT:** Was the intent to deliver those drugs to some other person?
**MS. VIDAL:** No.
**THE COURT:** What did you intend to do with the drugs that were in the car?
**MS. VIDAL:** Your Honor, I know that I'm guilty because they found the drugs. I didn't know the drugs were there.
**THE COURT:** Ms. Vidal, I can't accept your plea of guilty if you tell me that you didn't know anything about the drugs. You are pleading guilty to *possessing with the intent* to distribute drugs. Do you understand that?
**MS. VIDAL:** Yes, sir.

Aplt. Br. 7-8 (quoting Tr. at 17-19) (emphasis added). Defense counsel did not object to the knowing and voluntary character of the guilty plea.

Ms. Vidal subsequently failed to cooperate with law enforcement and thus did not qualify for the safety valve, leaving her subject to a ten-year statutory minimum sentence. This rendered her guilty plea of almost no practical value. At the sentencing hearing, Ms. Vidal's counsel noted that if she had not entered a guilty plea she would have had a viable motion to suppress; and that her decision to plead guilty, but not to cooperate with law enforcement, was so contrary to her interests as to cast doubt on her competence. Counsel proceeded to make a general plea for leniency. When asked by the court why counsel had not made a motion to examine Ms. Vidal's competency, her counsel admitted that he "should

-5-

have." Tr. 13. The court imposed the mandatory 120-month sentence. Ms. Vidal timely appealed.

## II. Discussion

### A. Waiver and the Plea Agreement

Ms. Vidal entered into a plea agreement that included an appeal waiver. A waiver of appellate rights will be enforced if: (1) "the disputed appeal falls within the scope of the waiver of appellate rights; (2) . . . the defendant knowingly and voluntarily waived his appellate rights; and (3) . . . enforcing the waiver would [not] result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc). The claim she seeks to raise on appeal—the validity of her conviction based on whether her guilty plea was knowing and voluntary—falls within the express scope of this waiver. We therefore first must confront whether Ms. Vidal knowingly and intelligently waived her right to appeal.

To determine whether an appeal waiver was knowingly and intelligently made, an appellate court considers both the language of the plea agreement and the adequacy of the Fed. R. Crim. P. 11 colloquy. *Id.* The defendant bears the burden of proving that the waiver was not knowing and voluntary. *Id.* at 1329. Here, Ms. Vidal's plea agreement unequivocally stated: "I understand the agreement and voluntarily sign it." Analysis of the colloquy presents a closer question. During the plea proceedings, the magistrate judge listed many of the

-6-

rights Ms. Vidal is entitled to under the Constitution, including the right to appeal her conviction. The magistrate went on to explain that by entering the plea agreement, Ms. Vidal was "giving up *most of* these rights" (emphasis added). The phrase "most of these rights" creates ambiguity as to which of the rights listed Ms. Vidal was actually waiving. Statements made during a plea colloquy that create ambiguity as to the rights being waived may preclude our enforcement of the waiver. *United States v. Wilken*, 498 F.3d 1160, 1167 (10th Cir. 2007).

The magistrate judge subsequently asked, "Do you understand there will be no trial and you will have waived or given up *all rights* associated with the trial, those being *the rights I have just discussed*[?]" (emphasis added). Ms. Vidal stated that she understood. This seems to suggest that all of the rights the magistrate had stated were being waived; however, there may still be some ambiguity, especially to a lay person, as to whether "all rights associated with the trial" includes appellate rights.

We need not decide whether that touch of ambiguity is sufficient to preclude a knowing and intelligent waiver of her right to appeal, because we conclude on the merits that her guilty plea was knowing and intelligent.

**B. Knowing and Intelligent Guilty Plea**

Whether a guilty plea was entered knowingly and intelligently is generally a question of law subject to de novo review. *Marshall v. Lonberger*, 459 U.S. 422, 431–32 (1983); *United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir.

1998). We review either for harmless or plain error, depending on whether defense counsel objected to the validity of the plea at the district court level. *United States v. Vonn*, 535 U.S. 55, 59 (2002).

Ms. Vidal's counsel never made an express objection challenging the validity of her plea. He never filed any motions to withdraw the plea, and made only a general plea of leniency to the district court judge. At the sentencing hearing, however, Ms. Vidal's counsel did state, "I think [Ms. Vidal] needs to be examined for competency, and I think that the Court needs to allow me to withdraw . . . ." Under 18 U.S.C. § 4241, defense counsel may make a motion to determine the competency of a defendant any time before sentencing. The context makes clear, however, that counsel's statement did not amount to such a motion. The judge even asked why counsel had not made a competency motion, and counsel responded that he "should have"; but even at that juncture he did not. We therefore review for plain error.

Plain error exists where there is: "(1) error; (2) that is plain; (3) which affects the government's substantial rights and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mendoza*, 543 F.3d 1186, 1190 (10th Cir. 2008). "We will, however, apply the plain error rule less rigidly when reviewing a potential constitutional error," *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir. 1991), such as accepting a plea that is not knowing and intelligent.

Ms. Vidal argues, contrary to an express statement in her signed plea agreement, that her guilty plea was not knowing and intelligent. In making this argument, she relies on portions of her colloquy with the magistrate judge, in which she maintained that she was unaware of the drugs in the car and thus lacked the requisite intent to commit the crime.

Guilty pleas must be entered intelligently and voluntarily. *United States v. Hurlick*, 293 F.3d 1223, 1230 (10th Cir. 2002). "A plea is 'knowing' if the defendant has 'a full understanding of what the plea connotes and of its consequence.'" *Gonzales v. Tafoya*, 515 F.3d 1097, 1118 (10th Cir. 2008) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). A defendant need not necessarily admit every element of the charged offense; a defendant is entitled to plead guilty when he is aware that the prosecution has a strong case against him and wishes not to take the risk of a jury trial and conviction. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (allowing a guilty plea under which the defendant "consent[s] to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). In such a case, the court is under a special obligation to ensure that the record contains strong evidence of actual guilt.

Ms. Vidal's plea was not styled as an *Alford* plea, but we regard it as sufficiently analogous to warrant these additional safeguards. In *Alford*, the

defendant was charged with first-degree murder, and the prosecutor agreed to accept a plea of guilty to a second-degree murder charge. Before the plea was accepted by the trial court, the defendant testified that he had not committed the crime, but that he was pleading guilty "because they said there is too much evidence . . . ." *Id.* at 29 n.2. He went on to say that he was pleading guilty to avoid the death penalty. *Id.* Here, Ms. Vidal testified that she did not have the requisite intent, but she also conceded that the state had enough evidence to establish that she committed the crime.

To ensure that guilty pleas accompanied by protestations of innocence are products of free and intelligent choice, such pleas should only be accepted if there was strong evidence in the record of the defendant's actual guilt, and if the defendant intelligently concluded that his interests required the entry of a guilty plea. We conclude that both of these requirements were met and, consequently, acceptance of Ms. Vidal's guilty plea did not violate her constitutional rights.

First, the record provided a strong factual basis for Ms. Vidal's guilt. She signed a plea agreement admitting the requisite intent. In addition, the officer's observations upon pulling over her car quickly led him to suspect that something was amiss. Both Ms. Vidal and Mr. Lopez-Gamez appeared extremely nervous, repeatedly looking around and shaking during their separate conversations with the police officer. He observed that all of the air vents in the car had air fresheners attached to them, giving the car a strong fruity odor. The officer could

conclude that a passenger in such a car would either actively know there were drugs being transported, or at least be wise to the fact that controlled substances may be present.

Also incriminating were the discrepancies between the stories presented by Ms. Vidal and Mr. Lopez-Gamez, as well as the inconsistencies within Ms. Vidal's own story. Ms. Vidal said someone named Garcia owned the car, but she did not know his number. Mr. Lopez-Gamez said the vehicle belonged to the brother of his friend Pedro, and that Ms. Vidal *did* know his phone number. Ms. Vidal said they were on their way to a particular casino, but she could not name it. Mr. Lopez-Gamez, in contrast, said they were going to the Route 66 casino.

After the officer discovered the methamphetamine in the car, Ms. Vidal changed her story, claiming now that they had borrowed the car from a friend to go to *multiple* casinos, not any casino in particular. Mr. Lopez-Gamez maintained that they were headed to a particular casino where Ms. Vidal had arranged for the delivery of the methamphetamine. Though these inconsistencies may seem trivial, they nevertheless cast doubt on both Ms. Vidal's and Mr. Lopez-Gamez's claim that they did not know that the drugs were in the car. When persons questioned by police tell inconsistent stories, even about details that are not incriminating in themselves, this suggests that they have something to hide. If Ms. Vidal did not know that illegal drugs were in the car, why would she act in this guilty fashion?

Moreover, when Mr. Lopez-Gamez learned how much methamphetamine was hidden in the car, he said, "They lied to us. It was not supposed to be that much." This statement tends to incriminate Ms. Vidal, as the word "us" suggests both Mr. Lopez-Gamez and Ms. Vidal knew drugs were in the car. All of this evidence, combined with the discovery of the 553.7 grams of methamphetamine in the car, create a factual basis for Ms. Vidal's guilt.

Second, though this is perhaps a more difficult issue, we conclude that Ms. Vidal intelligently concluded that her interests required entry of a guilty plea. The magistrate judge spent a great deal of time ensuring that Ms. Vidal understood intent was a requirement of the offense. After Ms. Vidal denied having knowledge of the drugs in the car, the magistrate judge told her that just finding the drugs in the car "isn't sufficient" for a conviction. He explained that "[b]efore you can be found guilty, there has to be evidence that you possessed these drugs and that you intended to distribute them." Ms. Vidal said that she understood.

The magistrate judge again asked whether Ms. Vidal possessed the drugs with the intent to distribute them. When she responded in the negative, he explained that the government's evidence indicated her intent to possess and distribute the drugs. Ms. Vidal agreed that it was "correct" that the government could prove she had the requisite intent. This is crucial to our analysis. It shows both that she understood that the government needed to prove she had the intent

and that she believed the government could prove that intent.

Again, the magistrate judge laid out the charge against Ms. Vidal, explaining that he could not accept her plea if she kept insisting she knew nothing about the drugs.[1]  He asked her one last time if she understood that she was pleading guilty to a charge that required intent and she responded, "Yes, sir."

In total, Ms. Vidal stated five times that she understood her charge required intent.  She entered into a plea agreement which listed the facts of the offense, including intent.  She signed the agreement, which included the lines, "I have read this agreement and carefully reviewed every part of it with my attorney.  I understand the agreement and voluntarily sign it."  In the colloquy with the magistrate judge, Ms. Vidal thrice expressed her understanding that a conviction required a showing of her intent.  Most critically, she admitted that the government had enough evidence to establish such intent, strongly suggesting that the decision to plead guilty was a knowing and strategic one.  Ms. Vidal also told the magistrate judge that she had received a copy of the indictment, and her attorney had discussed with her both the evidence that would be needed to convict her at trial and defenses available to her.

The district judge found, as the magistrate judge had, that Ms. Vidal was knowingly and intelligently pleading guilty.  Her apology for the offense likely

_____

[1]This is not, in fact, true, as noted by *Alford*.  A court can accept a defendant's guilty plea even if a defendant maintains his innocence, as long as the guilty plea is knowing and intelligent.  *See Alford*, 400 U.S. at 37.

led the court to conclude that Ms. Vidal decided to enter a guilty plea after knowingly balancing the risks of pleading guilty and going to trial, where the government could prove the requisite elements of the alleged crime. "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States*, 397 U.S. 742, 756 (1970). In hindsight, because Ms. Vidal did not cooperate with law enforcement and thus did not qualify for the safety valve, her plea agreement seems like an unwise decision. But she may have intended to take advantage of that provision in the plea agreement when she entered into it. That she ultimately chose not to provide information to law enforcement about other drug dealers does not mean that she did not intend to do so at the time she entered the plea agreement.

Ms. Vidal also raises a "procedural competency" claim, alleging that the district court erred by not ordering a competency hearing. We have held that to make such a claim, the defendant "must raise a bona fide doubt regarding his competency to stand trial . . . ." *McGregor v. Gibson*, 248 F.3d 946, 951 (10th Cir. 2001). In evaluating the claim, "we look only at the evidence available to the trial court when the plea was entered to determine if the judge ignored evidence that objectively would have raised doubt about the defendant's fitness to proceed." *Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004). In *Allen*, the

-14-

court held that the trial judge did not err in failing to order a competency hearing where the defendant assured the court he had reviewed the charges and penalties, had discussed his rights with counsel, and signed a plea agreement which certified that he understood the charges, penalties, and rights he was giving up by entering the plea. *Id.* This is not appreciably different from the analysis we have already conducted of Ms. Vidal's substantive claim.[2] The district court did not ignore any indications of incompetence, but read the pre-sentence report and heard her counsel's concerns. With this evidence before it, the district court properly determined there was not cause to order a competency hearing. We have no reason to disagree with that ruling.

The district court did not commit plain error in accepting Ms. Vidal's guilty plea, and it did not err in determining not to order a competency hearing. There was a strong factual basis in the record to support the government's case that her possession of the drugs was knowing and intentional. The district court sought to resolve any apparent conflict in Ms. Vidal's plea and oral statements, and was satisfied that she had intelligently concluded her interests required entry of a guilty plea. As a result, Ms. Vidal's constitutional rights were not violated.

---

[2] We have held that "the competency inquiry focuses on a defendant's ability to understand the proceedings," whereas the knowing and voluntary analysis conducted above "focuses on whether [the defendant] in fact did understand the proceedings." *Allen*, 368 F.3d at 1240. Because we have already determined that she understood the proceedings, it stands to reason that she had the ability to understand the proceedings.

## III. Conclusion

We therefore **AFFIRM** the decision of the district court.