FILED
United States Court of Appeals
Tenth Circuit

May 20, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

TERRY JO ROLLINGS,

        Defendant - Appellant.

No. 13-6014

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:11-CR-00064-D-2)**

---

Thomas E. Kimble, Arlington, Texas for Appellant.

Edward J. Kumiega, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Steven W. Creager, Special Assistant United States Attorney, with him on the brief) United States Attorney's Office, Oklahoma City, Oklahoma, for Appellee.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Terry Jo Rollings pleaded guilty to one count of knowingly possessing stolen goods. As part of the plea agreement, Rollings waived the right to appeal his guilty plea, the restitution imposed, and any other aspect of his conviction.

Despite waiving his right to appeal in his plea agreement, Rollings now wants to challenge his guilty plea. He argues that his guilty plea was not knowing and voluntary because he was not advised of the court's authority to order restitution and because he was not aware of all of the elements of the crime charged. Since his guilty plea allegedly was not knowing and voluntary, he claims that his waiver of his right to appeal the plea was likewise invalid. The government moved to enforce Rollings's appeal waiver under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam).

We conclude that, in determining whether an appellate waiver is knowing and voluntary under *Hahn*, we may consider whether the entire plea agreement, including the plea, was entered knowingly and voluntarily. Because we find that Rollings's guilty plea was knowing and voluntary, we AFFIRM the decision of the district court and GRANT the government's motion to enforce the appeal waiver in Rollings's plea agreement.

## I. Background

Rollings entered into a plea agreement in which he pleaded guilty to stealing a cargo trailer truck. The plea agreement outlined the conduct underlying his guilty plea. In particular, the agreement stated:

-2-

> Defendant agrees to enter a plea of guilty to Count 3 of
> the Third Superseding Indictment . . . charging [he]
> knowingly possessed and concealed with intent to
> convert to their own use, chattels of a value in excess of
> $1,000.00 in violation of Title 18, United States Code,
> Sections 659 and 2(a).

App. 133.[1] The plea agreement also stated that, to be found guilty of violating 18 U.S.C. §§ 659 and 2(a) as charged in the Third Superseding Indictment, Rollings was required to admit the basic elements of the crime: (1) he knowingly concealed and possessed the property described in the Third Superseding Indictment; (2) he did so "with the intent to deprive the owner of the use or benefit of the property or goods"; (3) the property was part of interstate or foreign shipment at the time; and (4) the property was over $1,000 in value. *Id.*

As part of the agreement, Rollings also signed a plea petition in which he stated:

> I possessed and concealed a North American Cargo
> trailer and its contents valued over one thousand dollars
> including its contents that was part of interstate
> shipment with the intent to deprive the owner of use or
> benefit of the property. This was in the Western Dist of
> Okla from March 09 to May 2009.

---

[1] Rollings argues that he did not receive a copy of the Third Superseding Indictment until minutes before the plea hearing, two days after he executed the plea agreement. But the plea agreement he signed states that he is pleading guilty to the Third Superseding Indictment, and Rollings admits that the language in the Third Superseding Indictment is identical to the previous indictment, of which he was aware.

*Id.* at 151. Rollings also affirmed that he knowingly and voluntarily waived his right to appeal or collaterally challenge his "guilty plea, sentence, restitution imposed, and any other aspect of his conviction." *Id.* at 137.

At the subsequent hearing to approve the plea agreement, the government summarized the deal, describing the underlying charges and the facts that supported the plea agreement. Following the prosecutor's summary, the district court assessed Rollings's understanding of the charges and punishment:

> THE COURT: Sir, do you believe that you fully understand the nature of the charges, the possible punishment, and the constitutional rights you're entitled to?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Knowing all the rights that you have and would be waiving and fully understanding the nature of the charges against you and the possible punishment, how do you plead to Count III of the Third Superseding Indictment? Guilty or not guilty?
>
> THE DEFENDANT: Guilty.

*Id.* at 216–17. The district court then asked the prosecutor to summarize the terms of the agreement and question Rollings about the factual basis for his guilty plea. Also during the plea colloquy, Rollings indicated that he understood the constitutional rights he was forfeiting by pleading guilty and that he understood that by pleading guilty he waived the right to appeal or collaterally challenge the sentence. Following the colloquy with the prosecutor, the district court accepted

Rollings's guilty plea, finding that Rollings entered the plea "voluntarily and with full understanding of the rights being given up, and that there is a factual basis for [his] plea." *Id.* at 226.

## II. Analysis

Rollings contends that the appellate waiver was invalid because he did not knowingly and voluntarily enter the plea agreement containing the appellate waiver. He bases this contention on two mistakes he claims the district court made in approving the plea agreement: (1) it misled him about the elements of the crime to which he pleaded guilty, and (2) it failed to apprise him that it could order substantial restitution as part of the sentence. In other words, he did not fully understand his crime or his potential punishment in entering the plea agreement. According to Rollings, his plea, therefore, was not knowing and voluntary.

The government asks us to ignore these questions. It points to the appellate waiver and urges us to confirm the waiver and dismiss the appeal, relying on *Hahn*, 359 F.3d at 1325–28. Applying the analytical framework for enforcing appellate waivers set out in *Hahn*, the government argues we should limit our inquiry only to the appellate waiver provision of the plea agreement in determining whether the agreement itself was entered knowingly and voluntarily. In response, Rollings argues that our cases require a more holistic review of the

entire plea agreement, including the guilty plea, to ascertain whether the agreement was entered knowingly and voluntarily.

We conclude the better reading of the law is that where, as here, the parties intended the agreement to stand or fall as a whole, we may examine all of the terms of the plea agreement in deciding whether to enforce an appellate waiver.

## A.  **Hahn** *and Appellate Waivers*

*Hahn* instructs us to enforce an appellate waiver after a familiar three-step process.  We consider whether (1) "the disputed appeal falls within the *scope of the waiver* of appellate rights"; (2) "the defendant *knowingly and voluntarily* waived his appellate rights"; and (3) "enforcing the waiver would [not] result in a *miscarriage of justice*."  *Hahn*, 359 F.3d at 1325 (emphasis added).  The defendant bears the burden of establishing these requirements.  *See id.* at 1329.

To resolve the second step of whether the waiver was knowing and voluntary, *Hahn* instructs us to look to the plea agreement and the explanation the district court provided to the defendant.  Thus, we ordinarily look to (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily"; and (2) whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy."[2]  *Id.* at 1325 (citations

---

[2]  Federal Rule of Criminal Procedure 11 states, among other things, that before accepting a guilty plea, the court must address the defendant in open court and determine that the defendant understands "the nature of each charge to which the defendant is pleading," "any maximum possible penalty, including

(continued...)

omitted).  In making this evaluation, we consider the "totality of the circumstances," recognizing the "synergistic effect" of both the "express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy."  *United States v. Tanner*, 721 F.3d 1231, 1234 (10th Cir. 2013) (per curiam).  In *Hahn* we concluded that an appellate waiver could be knowing and voluntary if the *right* was voluntarily relinquished—regardless of "what claims of error, if any, [the defendant] is foregoing"—because "[t]he whole point of a waiver . . . is the relinquishment of claims, *regardless* of their merit."  *Hahn*, 359 F.3d at 1326 & n.12 (citations omitted).

Following *Hahn*, however, the scope of our inquiry in determining whether defendants knowingly and voluntarily waived their appellate rights has not been entirely consistent.  Instead of looking solely to the defendant's understanding of the relinquished rights—such as jury trial, appeal, sentencing certainty—we have also looked to whether the defendant understood the nature of the charges and the consequences of the guilty plea itself.  *Compare, e.g.*, *Tanner*, 721 F.3d at 1234–35 (citing evidence that the defendant understood the terms of the plea agreement, including the factual basis for the plea, and the consequences of the

---

[2](...continued)
imprisonment, fine, and term of supervised release," any "mandatory minimum penalty," the court's "authority to order restitution," and "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(G),(H),(I),(N).

plea agreement), *and United States v. Salas-Garcia*, 698 F.3d 1242, 1254 (10th Cir. 2012) (noting that the plea agreement and district court explained the immigration consequences of a guilty plea), *with, e.g.*, *United States v. Smith*, 500 F.3d 1206, 1210–12 (10th Cir. 2007) (focusing solely on whether the court explained that the defendant was waiving her right to appeal and to collaterally attack her conviction), *and United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (inquiring only whether district court informed the defendant he was waiving his right to make a later motion under 18 U.S.C. § 3582(c)).

Adding to the uncertainty, in *United States v. Mitchell*, 633 F.3d 997, 1001 (10th Cir. 2011), albeit in a different context, we held that "[i]f a guilty plea is not knowing and voluntary, it is void, and any *additional waivers* in the plea agreement generally are unenforceable." As a result, in that case we looked to the voluntariness of the plea to conclude that the defendant's waiver of the protections of Federal Rule of Evidence 410 was knowing and voluntary. *See id.* at 1002 ("The entirety of the record bears out the district court's conclusion [that Mitchell's plea was knowing and voluntary] . . . . The plea agreement therefore is enforceable."). Similarly, in *United States v. Vidal*, 561 F.3d 1113, 1118 (10th Cir. 2009), we reviewed the voluntariness of the defendant's plea, despite an appellate waiver. *See Vidal*, 561 F.3d at 1118 (noting that "[w]e need not decide [whether ambiguity in the Rule 11 colloquy precluded] a knowing and intelligent waiver of the defendant's right to appeal because we conclude on the merits that

-8-

her guilty plea was knowing and intelligent.")[3]; *see also United States v. Byrum*, 567 F.3d 1255, 1258 n.2 (10th Cir. 2009) (stating that although the defendant waived his right to appeal or collaterally challenge his conviction and sentence, "[t]o the extent Byrum challenges the district court's denial of his attempt to withdraw his guilty plea under Rule 11 (and hence the condition precedent to the court's acceptance of the plea agreement), or whether his plea was knowing and voluntary, our review is not precluded" and further stating that the defendant "cannot succeed on his merits argument even assuming it was not waived").

The ambiguity in our cases is whether an *appellate waiver* contained in a plea agreement can be knowing and voluntary if the *plea* in the plea agreement was not also knowing and voluntary. As a result, we must decide whether, in applying the second step of the *Hahn* inquiry, we should consider whether a defendant's entire *plea agreement* was knowing and voluntary—not merely whether the defendant understood the particular rights he was giving up when he entered into the plea agreement.

---

[3] In *Hahn*, we stated that we would not consider the merits of an appeal in determining whether to enforce an appellate waiver. *See Hahn*, 359 F.3d at 1328 ("The parties will not be directed to brief the underlying merits of the defendant's appeal. If the panel finds that the plea agreement is enforceable, it will summarily dismiss the appeal. If the panel finds the plea agreement unenforceable, it will issue a ruling consistent with this finding."). Here, unlike in *Hahn*, the merits of the appeal concern the voluntary nature of the plea as it relates to the knowing and voluntary nature of the plea agreement. *Hahn*'s directive not to consider the merits of the appeal, therefore, does not apply to appeals alleging that the plea agreement was not knowing and voluntary. *See Vidal*, 561 F.3d at 1118.

We conclude it is appropriate to consider the knowing and voluntary nature of the entirety of the plea agreement to satisfy this inquiry. In other words, if the defendant did not voluntarily enter into the agreement, the appellate waiver subsumed in the agreement also cannot stand. This follows from the logic of *Hahn*. Our holding is premised on the understanding that "contract principles govern plea agreements." *Hahn*, 359 F.3d at 1324–25. In *Hahn*, we borrowed this understanding from an Eighth Circuit case, *United States v. Andis*, 333 F.3d 886 (8th Cir. 2003), whose approach to enforcing appellate waivers we adopted with "slight variation." *Hahn*, 359 F.3d at 1325. In *Andis* the court explained the "requirement that a plea agreement and waiver be entered into knowingly and voluntarily *applies to each term of an agreement*." *Andis*, 333 F.3d at 890 (emphasis added).[4] Thus, for example, "an agreement, or aspects of an agreement" would not be entered into with the requisite knowledge or voluntariness if it resulted from such influences as undue coercion or ineffective assistance of counsel. *Id.*

As a matter of logic and practicality, then, we must examine the totality of the plea agreement—both the appellate waiver and the plea provisions—in

[4] The government has not argued here that the provisions in the agreement are severable, and, even if it had, this argument would fail because the plea agreement on its face is completely integrated. *See* App. 132 ("This document contains the entire plea agreement between defendant, Terry Jo Rollings, and the United States through its undersigned attorney. No other agreement or promise exists, nor may any additional agreement be entered into unless in writing and signed by all parties.").

determining whether the plea agreement was knowing and voluntary.[5]  With

regard to the plea, we must therefore ascertain at a minimum whether the

defendant had notice of the nature of the charges against him and the possible

penalties the charges carry.  *See United States v. Gigot*, 147 F.3d 1193, 1199

(10th Cir. 1998) (holding that a plea was not knowing and intelligent "choice

between available alternatives" where the defendant was not properly informed

about the charged crimes and penalties).

Other circuits apply a similar framework.  *See, e.g., United States v. Ortiz-

Garcia*, 665 F.3d 279, 284–85 (1st Cir. 2011) (finding an appellate waiver not

knowing and voluntary because neither the plea agreement nor the Rule 11

colloquy informed the defendant of the maximum possible penalty for the offense

to which the defendant pleaded guilty); *United States v. Cervantes*, 420 F.3d 792,

794 (8th Cir. 2005) (confirming that the plea agreement advised the defendant of

the "nature and range of her possible sentence" and that the defendant had

reviewed the provisions of the plea agreement with her attorney before finding

that the appeal waiver in the plea agreement was knowing and voluntary); *United

States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) (noting that the

defendant's challenge to Rule 11 colloquy "goes to the heart of whether his guilty

plea, including the waiver of appeal, is enforceable.  Thus, we must determine

---

[5]  Where only the appellate waiver provision is challenged, as in most cases, we are not obligated to consider whether the plea in the plea agreement is valid.

whether the plea was valid in order to determine if appeal is permitted."); *United States v. Rosa*, 123 F.3d 94, 100 (2d Cir. 1997) ("A second disturbing characteristic of this waiver provision relates to the well-established principle that all plea bargains must be made knowingly and voluntarily.  It has been recognized that even under a standard plea agreement a court must carefully scrutinize the plea proceeding and search for a clear demonstration of the extent of the defendant's knowledge and the voluntary nature of the plea." (citing *United States v. Ready*, 82 F.3d 551, 556 (2d Cir. 1996))); *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal.").

One objection the government makes is that this approach implicitly expands *Hahn* and undercuts the benefit of the bargain—avoiding appeals that the defendant has relinquished.  We disagree.  Under *Hahn* we already undertake a searching review of the plea agreement and Rule 11 colloquy in determining whether the appellate waiver was knowing and voluntary.  This review ordinarily requires us to decide if the record discloses whether the plea in the plea agreement was also entered into knowingly and voluntarily.  In most cases this inquiry poses no problem.  The defendant is represented by counsel, and the court

confirms the defendant's admission of guilt in open court, explaining the nature of the charges, the terms of the plea agreement, and the potential punishment.

In sum, in considering whether an appellate waiver is knowing and voluntary, we consider whether the defendant entered into the plea agreement knowingly and voluntarily. Where a plea agreement contains a plea and an appellate waiver, we may therefore look to whether the plea was knowing and voluntary in deciding whether the plea agreement was entered knowingly and voluntarily.

### B. Rollings's Plea Agreement

Rollings argues that his guilty plea was not knowing and voluntary for two reasons arising from the Rule 11 colloquy: (1) the district court's failure to advise him of the court's authority to order restitution[6]; and (2) the district court's failure to ensure he understood the elements of the charged offense—that he must possess the stolen goods while knowing them to be stolen.

Whether a guilty plea was entered knowingly and voluntarily is generally a question of law we review de novo. *See Vidal*, 561 F.3d at 1118. If defense counsel did not object to the validity of the plea, we review solely for plain error. *See id.* at 1118–19. Plain error exists if there is "(1) an error; (2) that is plain; (3)

---

[6] At oral argument, Rollings stated that this was "not now his main argument," although he acknowledges he had made it below. Because in our view Rollings did not go so far as to abandon this line of argument, we therefore consider it on the merits.

which affects the government's substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1119 (citations and internal quotation marks omitted). Because Rollings's counsel did not object to the validity of his plea, we review his claim for plain error.

### *(1) Restitution*

The government does not dispute that the district court failed to state that it had the power to order restitution in violation of Federal Rule of Criminal Procedure 11(b)(1)(K).[7] But to establish that the error affected substantial rights, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). If a defendant "receives the information omitted by the district court from other sources," he "generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him." *United States v. Ferrel*, 603 F.3d 758, 763 (10th Cir. 2010).

Rollings argues that he was not apprised of the court's power to order restitution and the amount of restitution, which in this case was substantial because of related conduct by his co-defendant. Although unknown at the time of the plea colloquy, after the presentence investigation, the district court ordered him to pay almost $500,000 in restitution based on all of the conduct associated

---

[7] Rule 11(b)(1)(K) requires the court to advise the defendant of the court's "authority to order restitution" before the court accepts a plea of guilty.

with the crime and the crimes of a co-defendant.[8] The loss attributable to Rollings's theft of the cargo trailer was $45,000.

To support his argument, Rollings relies on our holding in *United States v. Pogue*, 865 F.2d 226 (10th Cir. 1989). In *Pogue*, we held that a defendant was prejudiced by the district court's failure to inform him of the possibility of restitution and that he was later ordered to pay $1.7 million even though he had notice of only a possible $2,000 fine. But *Pogue* is distinguishable. The defendant in *Pogue* had *no prior knowledge* of the district court's power to order restitution. *See Pogue*, 865 F.2d at 228 ("Both the record of defendant's plea hearing and his written statement in advance of plea corroborate defendant's claim that he was not informed by the district court of the possibility of restitution prior to entering his plea."). Here, in contrast, Rollings's plea agreement clearly informed him that the court would order restitution. The plea agreement, signed two days prior to the Rule 11 colloquy, contained an entire paragraph alerting Rollings to the district court's *duty*, not merely its power, to order restitution.[9] In addition, the plea petition Rollings signed stated that the

---

 [8] Rollings's restitution obligation was joint and several with a co-defendant.

 [9] The plea agreement states, "[T]he Court must order the payment of restitution to the victim(s) of the offense. Pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, the parties further agree that, as part of the sentence resulting from the defendant's plea, the Court will enter an *order of restitution to all victims of the defendant's relevant conduct* as determined by reference to the United States

(continued...)

district court could require restitution.[10]  Considering, as we must, the "synergistic effect" of the plea agreement and colloquy, *Tanner*, 721 F.3d at 1234, we conclude that Rollings had adequate notice of the district court's power to order restitution.

Furthermore, Rollings also specifically agreed in the plea agreement that the restitution order would encompass not only the victims of the offense to which he was pleading guilty, but "all victims of the defendant's relevant conduct as determined by reference to the United States Sentencing Guidelines."  App. 133–34.  And Rollings was not required to know with specificity the exact amount of restitution that would be ordered before he forfeited his appellate rights.  *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.").

_____

[9](...continued)
Sentencing Guidelines."  App. 133–34 (emphasis added).

[10]  Paragraph 20 of the plea petition states in relevant part, "If you plead GUILTY, the judge may require you to make restitution to any victim of the offense [18 U.S.C. §§ 3663(a)(3) and 3664]" and notes that for certain offenses occurring on or after April 24, 1996, "ordinarily the judge is required to order you to pay restitution to any victim of the offense [18 U.S.C. § 3663A]."  App. 146.

As a result, Rollings was aware of both the court's power to order restitution and the possible restitution he could be required to pay. Thus, Rollings has not satisfied his burden of showing the district court's failure to adequately inform him of its power to order restitution affected his substantial rights or is a miscarriage of justice. *See Ferrel*, 603 F.3d at 764.

### 2. Elements of the Charges

Rollings also asserts that the prosecutor never confirmed during the Rule 11 colloquy whether he possessed stolen goods while knowing them to be stolen, as required by 18 U.S.C. § 659.

During the colloquy, the prosecutor questioned Rollings on whether he knew the goods were stolen while in his possession:

> Q: Okay. So you had this stuff and you knew the items in that, including the trailer itself, were stolen; is that right?
>
> A: Yes.
>
> Q: Okay so you had this. How did you know it was stolen? Mr. Hayes said, I stole this and - I stole this? We got it from a certain area?
>
> A: I didn't pay no money for it. He did tell me eventually it was stolen.
>
> Q: Okay. But from your past experience you knew it was stolen; is that correct? He just gave you this trailer, is that correct, with the merchandise - with the storm windows and the doors; is that right?
>
> A: Yes.

> Q: Okay. So you knew it was stolen. And it looked
> like it had a lot of stuff in it; is that right?
>
> A: Yes.

App. 223.

Thus, Rollings admits he became aware the trailer was stolen. He also conceded the trailer was found on his property, showing he retained possession of the trailer for at least some time after he found out it was stolen. This was sufficient to prove a violation of § 659. *United States v. Koran*, 453 F.2d 144, 146 (10th Cir. 1972) (violation of § 659 can be proven by showing defendant retained possession of the goods after becoming aware the goods were stolen).

But even assuming this exchange is not enough, any error in the colloquy did not affect his substantial rights because Rollings was informed prior to the plea colloquy of the intent element. *See Ferrel*, 603 F.3d at 763. Before the plea hearing, Rollings received a copy of the Third Superseding Indictment, which stated the required mens rea. *See* App. 117 (charging Rollings with intent to convert to his own use chattels moving in interstate commerce "knowing the said goods and chattels to be stolen"). That Rollings was provided with a copy of his indictment "give[s] rise to a presumption that the defendant was informed of the nature of the charge against him." *United States v. Weeks*, 653 F.3d 1188, 1199 (10th Cir. 2011) (citation and internal quotation marks omitted). In addition, at the plea hearing Rollings confirmed—reviewing the documents with the

-18-

prosecutor—that he had read and understood the plea petition and plea agreement and had reviewed both with his attorney. These facts convince us that Rollings had adequate notice of the elements of the charges against him. *See Weeks*, 653 F.3d at 1199 (finding relevant that the defendant had read and understood both the indictment and the plea agreement containing the charges against him).

As a final argument, Rollings contends the indictment's description of the elements of the charge was confusing and that his answers during the colloquy cannot establish that Rollings received "'real notice of the true nature of the charge against him.'" Aplt. Br. at 45 (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 (1976)). But in *Henderson*, the defendant was *never* formally charged with the offense to which he pleaded guilty, and *never* at any point received notice of the required intent element from an indictment or through his attorneys. *See id.* at 642–43, 46–47; *see also Gigot*, 147 F.3d at 1198 (finding plea involuntary where the defendant was "never informed by the indictment or otherwise of the elements of the offenses to which she pled guilty"). Here, in contrast, Rollings was formally charged with the crime, had notice of the elements of the offense from the indictment and plea agreement, and stated that he understood the charges and that he had reviewed his plea petition and plea agreement with his attorney.[11]

---

[11] Rollings also argues that he did not have true notice of the elements because the indictment "confusingly includes two different *mens rea* elements

(continued...)

Accordingly, any ambiguity regarding Rollings's understanding of the charges during the plea colloquy does not constitute plain error.

## III.  Conclusion

Rollings cannot demonstrate that his appellate waiver was not knowing and voluntary.  We therefore GRANT the government's motion to enforce the waiver and dismiss the appeal.  We also GRANT the government's motion to supplement the record and deny as moot Rollings's motion for release pending appeal.

---

[11](...continued)
without explaining the significance of either."  Aplt. Br. at 47.  Rollings's indictment charges him with "knowingly possess[ing] and conceal[ing] with intent to convert to [his] own use" property moving in interstate commerce "knowing the said goods and chattels to be stolen."  App. 117.  It is true that the indictment's description of the charge contains elements from two different parts of § 659: stealing goods with intent to convert them and possessing stolen goods knowing them to be stolen.  But although it added an additional intent element, the indictment's description of the charge clearly encompasses a violation of § 659: receiving or possessing stolen goods knowing them to have been stolen.  Rollings therefore cannot be said to have had *no* notice of the elements of the charges against him, as in *Henderson* or *Gigot*.