**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

VICTOR HERNANDEZ, a/k/a Chicho,

    Defendant - Appellant.

No. 18-1472
(D.C. No. 1:17-CR-00134-CMA-10)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

This matter is before the court on the government's motion to enforce the

appeal waiver in Victor Hernandez's plea agreement. Exercising jurisdiction under

28 U.S.C. § 1291, we grant the motion and dismiss the appeal.

**BACKGROUND**

Hernandez pleaded guilty to distribution and possession with intent to

distribute a mixture and substance containing a detectable amount of cocaine, a

Schedule II controlled substance, and aiding and abetting the same, in violation of

18 U.S.C. § 2, and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Mot. to Enforce, Attach. 1

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

at 2; *id.* Attach. 4 at 1. Hernandez disputed the government's interpretation of the communications it intercepted between him and his co-defendant Eduardo Estrada Cortes, "denie[d] that he was a cocaine source of supply" for Estrada-Cortes, and disputed that he was the man identified as being with Estrada-Cortes shortly before law enforcement seized 1006.6 grams of cocaine from Estrada-Cortes. *Id.* Attach. 1 at 7-8. But by signing the agreement, he acknowledged that there was a factual basis for his guilty plea and expressly admitted that (1) he lent money to Estrada-Cortes, which he knew would further Estrada-Cortes's "distribution activities"; (2) his claimed ignorance of what Estrada-Cortes was using the money for did not "negate his culpability"; and (3) "he is guilty of the elements of" the offense. *Id.* at 6, 8 & n.1.

The plea agreement contained the following appeal waiver:

> The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 21; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

*Id.* at 3-4. It also included a detailed explanation of the possible penalties and advised Hernandez that the maximum allowable sentence was twenty years in prison and that, based on the offense level proposed by the government and Hernandez's

2

criminal history score, the recommended guidelines range was 37 to 46 months' imprisonment. *Id*. at 5-6, 9.

Hernandez was assisted throughout the change of plea hearing by a Spanish language interpreter. He confirmed that he had discussed the written plea agreement with counsel and that he understood its terms, including the appeal waiver and possible penalties. The court asked him to review the written statement of facts, and after doing so, Hernandez told the court those facts were true, indicated that there were no inaccuracies he wanted to correct, and acknowledged that they provided a factual basis for the charge. He confirmed that he and his lawyers had discussed possible defenses and that he understood the prosecution's burden of proof, and he assured the court that he wanted to waive his right to proceed to trial and was "pleading guilty because [he is] guilty," *id.* Attach. 2 at 15.

He told the court that he had not been threatened and that no promises had been made to him other than the concessions reflected in the written plea agreement to induce him to plead guilty. When the court asked if anyone had forced him to plead guilty, Hernandez responded, "In no way whatsoever, Your Honor." *Id*. at 27. Likewise, when the court asked whether his lawyers had told him "how . . . to answer" the court's questions at the hearing, Hernandez said, "In no way, Your Honor." *Id*. at 30. Based on Hernandez's responses to the court's questions and its observations of his demeanor during the hearing, the court accepted his plea as having been voluntarily, knowingly, and intelligently entered, and expressly found that his plea was "not the result of . . . fear, coercion or undue influence." *Id.* at 34.

3

At the subsequent sentencing hearing, the government asked the court to increase Hernandez's offense level from 21 to 24. The government claimed the increase was justified because the amount of drugs in Estrada-Cortes's possession when he was arrested was attributable to Hernandez and established that he was a drug supplier for Estrada-Cortes. But the court denied the requested increase, concluding that the evidence the Government offered to support its attribution theory did not satisfy its burden of proving that Hernandez was a drug supplier for sentence-enhancement purposes. The court also expressed doubt that the evidence would have been sufficient to obtain a conviction at trial and recognized that Hernandez must have experienced "pressure" in deciding whether to plead guilty or proceed to trial. *Id*., Attach. 3 at 20. The court then adopted a significantly reduced guidelines range, granted Hernandez's request for a downward variance, and sentenced him to probation for one year, explaining that the sentence was justified because although there was no direct evidence that he possessed or distributed drugs, he was "to some degree culpable" because he lent money to a friend "knowing" it would "probably" be used to purchase drugs. *Id*. at 33.

Despite the fact that Hernandez's sentence did not fall within any of the exceptions that would permit an appeal, he filed an appeal seeking to challenge his conviction and sentence on the ground that he received ineffective assistance of counsel. Specifically, he claims he is not guilty of any offense and that his attorneys instructed him to lie to the district court at the change of plea hearing.

4

**DISCUSSION**

Whether a defendant's appeal waiver is enforceable is a question of law we review de novo. *United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008). In ruling on a motion to enforce, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

Here, although Hernandez's waiver specifically excludes claims of ineffective assistance of counsel, *see* Mot. to Enforce, Attach. 1 at 4, it has long been the rule that ineffective-assistance claims generally should be raised in collateral proceedings under 28 U.S.C. § 2255, *see United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). "This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005); *see also Hahn*, 359 F.3d at 1327 n.13.

Here, Hernandez concedes that the appeal falls within the scope of the appeal waiver, and we agree with the government that the second and third conditions are satisfied.

1. **Knowing and Voluntary**

In determining whether a defendant knowingly and voluntarily waived his appellate rights, we generally examine the language of the plea agreement and the

adequacy of the Fed. R. Crim. P. 11 plea colloquy. *Hahn*, 359 F.3d at 1325. "[I]f the defendant did not voluntarily enter into the agreement, the appellate waiver subsumed in the agreement also cannot stand." *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014). "[A] properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam). It is Hernandez's burden to "present evidence establishing that he did not understand the waiver." *United States v. Cudjoe*, 634 F.3d 1163, 1166 (10th Cir. 2011).

Here, Hernandez does not challenge the adequacy of his Rule 11 advisement or claim he did not understand the appeal waiver. Rather, although he does not seek to withdraw his plea, he claims the plea—not just the appeal waiver—was not knowing and voluntary because he entered it "under coercion and duress." Resp. at 3. More specifically, in the affidavit attached to his response, he claims he repeatedly told his lawyers, including on the day of the plea hearing, that he did not want to plead guilty because he was innocent. He maintains that they negotiated the plea agreement without his consent and pressured him to plead guilty by telling him that if he insisted on going to trial he would be sentenced to prison for eight years, his wife would lose her green card and be deported, and his daughter would lose access to life-saving medical treatment. *Id.*, Attach. 1 at 1-2. Hernandez further attested in his affidavit that one of his attorneys insisted that Hernandez tell the judge at the plea hearing that he lent Estrada-Cortes money to "pay[] a debt for drugs," and that he

6

knew Estrada-Cortes was dealing drugs and that he would use the money Hernandez lent him to fuel his drug operation. *Id*. at 3.

But the record belies these assertions. Hernandez repeatedly assured the court during the plea hearing that he wanted to plead guilty and was doing so voluntarily. He indicated that he was satisfied with his attorneys' representation, and expressly denied that he had been threatened or pressured into pleading guilty or that his attorneys had told him "how . . . to answer" the court's questions, Mot. to Enforce, Attach. 2 at 30. And Hernandez never told the court—as he now claims counsel directed him to do—that he lent Estrada-Cortes money to pay a drug debt. On this record, we conclude that Hernandez's allegations of coercion are insufficient to overcome his sworn declarations both in writing and in open court that his plea was voluntary.

## 2. **Miscarriage of Justice**

A waiver of appellate rights in a plea agreement cannot be enforced if doing so would result in a miscarriage of justice. *Hahn*, 359 F.3d at 1325. A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. at 1327 (internal quotation marks omitted). The only one of these conditions potentially applicable here is ineffective assistance of counsel. As stated above, however, any such

allegations should be raised in a § 2255 proceeding.  *See Porter*, 405 F.3d at 1144; *Hahn*, 359 F.3d at 1327 n.13.

## CONCLUSION

Accordingly, we grant the government's motion to enforce the appeal waiver and dismiss the appeal.

Entered for the Court
Per Curiam