**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IGNACIO SALCIDO, JR.,

    Defendant - Appellant.

No. 19-2040
(D.C. No. 2:16-CR-04290-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

This matter is before the court on the government's motion to enforce the

appeal waiver in Ignacio Salcido, Jr.'s plea agreement.  Exercising jurisdiction under

28 U.S.C. § 1291, we grant the motion and dismiss the appeal.

## BACKGROUND

Salcido pleaded guilty to transportation of a person under 18 with intent to

engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  The written plea

agreement provided a detailed advisement about the possible sentences.  As pertinent

here, it indicated that Salcido was subject to a statutory mandatory minimum

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence of 120 months' imprisonment but could be sentenced to up to life in prison, Mot. to Enforce, Attach. 1 at 2, and that the parties had stipulated that 120 to 135 months was the appropriate sentence in this case, *id.* at 4. The plea agreement also indicated that Salcido had agreed—with no exceptions—to waive his "right to appeal [his] conviction[] and any sentence" imposed in compliance with the agreement. *Id.* at 8. By signing the written plea agreement, he acknowledged that he was entering his plea knowingly and voluntarily and that he understood its consequences, including the statutory minimum and maximum sentences, stipulated sentencing range, and appeal waiver.

At the change of plea hearing, Salcido assured the court that he had read and discussed the plea agreement with counsel before signing it and that he understood its terms. The court reminded him twice about the appeal waiver, and it confirmed that he "completely" understood that by accepting the plea agreement he was waiving his right to appeal. *Id.* at 21-22, 35. With respect to sentencing, the court reminded Salcido of the stipulated sentencing range, the 120-month mandatory minimum, and the possibility that if convicted at trial he could be sentenced to up to the statutory maximum of life in prison. At every step, Salcido confirmed that he understood the court's advisement.

Although he initially expressed reservations about pleading guilty, he ultimately assured the court that he had weighed the "pros and cons" and had concluded that it was "in [his] best interest[s]" to plead guilty, *id.* at 30, and to accept "10 to 12 years versus facing 22 years" or more, *id.* at 19. When the court offered to

2

end "this plea hearing, forget about the Plea Agreement, and proceed with [a] trial," Salcido declined, reaffirming his desire to accept the terms of the plea agreement. *Id.* at 18. And after the prosecutor explained the elements of the offense and outlined the government's evidence, Salcido admitted that he was guilty. Based on Salcido's responses to the court's questions and its observations of his demeanor during the change of plea hearing, the court accepted his plea as having been knowingly and voluntarily entered.

The initial presentence report (PSR) indicated that based on the total offense level and Salcido's criminal history category the guidelines range under the plea agreement was 97 to 121 months but that, because the 120-month mandatory minimum was greater than the minimum of the guidelines range, the effective guidelines range was 120 to 121 months. The initial PSR calculated that the guidelines range if Salcido were convicted at trial would be 135 to 168 months. The government objected to those guidelines calculations, arguing that a two-level vulnerable victim enhancement applied. The Probation Office agreed and submitted an amended PSR with adjusted guidelines ranges of 121 to 151 months under the plea agreement, and 168 to 210 months if Salcido were convicted after trial.

After the court accepted his plea but before sentencing, Salcido, represented by substitute court-appointed counsel, moved to withdraw his plea on the grounds that he had a credible defense, that plea counsel conducted an inadequate pre-trial investigation, and that he was coerced into pleading guilty by the threat of a potential life sentence. The judge who ruled on the motion was the same judge who had

3

presided at the change of plea hearing. After a hearing on the motion, the court rejected each of Salcido's arguments on the merits and denied the motion, finding that he failed to show a fair and just reason for his request to withdraw his plea. *See* Fed. R. Crim. P. 11(d)(2)(B) (providing that a defendant can withdraw a guilty plea after entry of the plea but before sentencing if he "can show a fair and just reason for requesting the withdrawal").

At the subsequent sentencing hearing, the court sustained Salcido's objection to the vulnerable victim enhancement and adopted a guidelines range of 97 to 121 months, making the effective guidelines range 120 to 121 months. The court then sentenced Salcido to the statutory minimum term of 120 months' imprisonment.

## DISCUSSION

"Whether a defendant's appeal waiver . . . is enforceable is a question of law we review de novo." *United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008). In ruling on a motion to enforce, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

Here, Salcido acknowledges that his sentence is within the scope of the appeal waiver and he does not contend that enforcing it would result in a miscarriage of justice. Thus, the only question before us is whether his waiver was knowing and voluntary. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005)

4

(holding that this court need not address a *Hahn* factor that the defendant does not contest).

In determining whether a defendant knowingly and voluntarily waived his appellate rights, we examine the language of the plea agreement and the adequacy of the Fed. R. Crim. P. 11 plea colloquy. *Hahn*, 359 F.3d at 1325. "[I]f the defendant did not voluntarily enter into the agreement, the appellate waiver subsumed in the agreement also cannot stand." *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014). "[A] properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam). It is Salcido's burden to "present evidence establishing that he did not understand the waiver." *United States v. Cudjoe*, 634 F.3d 1163, 1166 (10th Cir. 2011).

Salcido does not claim he did not understand the appeal waiver. Rather, although he does not seek to withdraw his plea, he claims the plea—not just the appeal waiver—was not knowing and voluntary because (1) the district court told him he would receive a life sentence if convicted at trial, and (2) plea counsel was ineffective.

The record does not support Salcido's assertion that the court advised him that the only option if he were convicted at trial was a life sentence. To the contrary, the record demonstrates that he was advised both in writing and by plea counsel that if convicted at trial he "might face a much higher sentence," Mot. to Enforce, Attach. 2

5

at 6, and that, whether convicted following a jury trial or pursuant to a guilty plea, the district court had the discretion to determine what the ultimate sentence would be. When the court asked Salcido whether he understood those advisements, he repeatedly confirmed that he did. The court then explained that it could reject the parties' stipulated sentencing range by refusing to accept the plea agreement, but that if it accepted the agreement, it was required to impose a sentence within the stipulated range. Salcido said he understood and that his "hope is that . . . the Court would approve the agreement so that I can avoid a longer sentence." *Id*. at 22.

Salcido's reliance on the court's statement that a life sentence "would be the consequence for being convicted at trial," *id.* at 27, ignores the context of the court's statement. At that point in the hearing, Salcido was reiterating that his decision to plead guilty was motivated primarily by the desire to avoid a lengthy prison sentence. He explained that he recognized that if convicted at trial, he "face[d] 20, 25 years to life," and said the choice between admitting guilt and avoiding a longer prison sentence "feels" like "coercion." *Id*. at 26. Salcido and the court then had the following exchange:

> THE COURT: Well, if you're feeling coerced, well, I don't have to accept your plea of guilty. Even if you stand there and say "I'm guilty," if you're telling me that you were feeling coerced to plead guilty, I don't have to accept it.

> THE DEFENDANT: And I understand that, as well, Your Honor, and that creates [an] issue for me, as well, because my -- my hope would be that the Court would approve the plea. I'm just trying to be as honest to the questions that you're asking me.

6

THE COURT: Well, I'm trying to be as plain for you as possible and making it as simplistic as possible so that there is no confusion. Ultimately, you can decide not to plead guilty.

THE DEFENDANT: With the -- With the threat imposed, though.

THE COURT: Well, what would be the threat as you see it?

THE DEFENDANT: Life sentence, maybe.

THE COURT: That would be the consequence for being convicted at trial.

THE DEFENDANT: Well, thank you, Your Honor. That clears it up.

*Id*. at 26-27. The court's statement was thus describing Salcido's fear that he would be sentenced to life if convicted at trial, not suggesting that he actually would receive a life sentence.

Salcido's express recognition before this colloquy that he understood his options—pleading guilty and being sentenced to between 10 and 12 years or proceeding to trial and facing between 20 years to life—belies his claim that the court misled him into thinking he would definitely be sentenced to life if convicted after trial. On this record, we conclude that Salcido's allegations that he did not understand his sentencing options are insufficient to overcome his sworn declarations both in writing and in open court that he did.[1]

---

[1] The cases Salcido cites to support his argument are inapposite, because they address Rule 11's prohibition against judicial involvement in plea negotiations, which guards against the risk of a court using threats of lengthy sentences to coerce a defendant to enter into an involuntary guilty plea. *See, e.g.*, *United States v. Cano-Varela*, 497 F.3d 1122, 1124, 1135 (10th Cir. 2007) (vacating guilty plea because district court improperly participated in plea negotiations).

Salcido also claims his plea was involuntary because he received ineffective assistance of counsel. Specifically, he claims counsel failed to tell him the initial PSR calculated that the guidelines range if he were convicted at trial would be 135 to 168 months and that he would not have pleaded guilty if he had known the range could be that low. But it has long been the rule that ineffective-assistance claims generally should be raised in collateral proceedings under 28 U.S.C. § 2255, not on direct review. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). "This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *Porter*, 405 F.3d at 1144; *see also Hahn*, 359 F.3d at 1327 n.13. We thus decline to consider Salcido's claim.

## CONCLUSION

Accordingly, we grant the government's motion to enforce the appeal waiver and dismiss the appeal.

Entered for the Court
Per Curiam

8