FILED
United States Court of Appeals
Tenth Circuit

July 27, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TERRANCE LUCAS COTTINGHAM,

    Defendant - Appellant.

No. 22-5004
(D.C. No. 4:20-CR-00209-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Terrance Cottingham seeks to appeal his conviction for Robbery in Indian Country. Trying to prevent the appeal, the government moves to enforce the appeal waiver in Mr. Cottingham's plea agreement. Mr. Cottingham responds that we may not enforce the waiver because he did not enter into the plea agreement knowingly. That is so, he says, because he incorrectly thought that he would receive roughly six years of credit against his sentence and that he would have a meaningful opportunity to appeal if the Bureau of Prisons (BOP) denied him that credit. These arguments

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

fail to show that he did not enter his plea knowingly. So we grant the government's motion and dismiss the appeal.

## *Background*

The robbery underlying this case occurred in 2015. Oklahoma originally prosecuted Mr. Cottingham for it, and he received a twenty-five-year prison sentence. He soon accumulated concurrent sentences from other state cases. He served roughly 806 days in custody for only the robbery before starting the other state sentences, then spent several years serving concurrent sentences for the robbery and other state offenses. In 2021, however, a state court vacated the robbery conviction after the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).

The federal government prosecuted Mr. Cottingham in this case for the same 2015 robbery. The parties reached a plea agreement stipulating to a ten-year sentence that "should run concurrent with time [Mr. Cottingham] is already serving in the Oklahoma Department of Corrections for offenses unrelated to the instant offense." R. vol. 1 at 97. The plea agreement required Mr. Cottingham to waive "the right to directly appeal the conviction and sentence." *Id.* at 87.

Mr. Cottingham now claims to have misunderstood the plea agreement in two ways. First, he says he thought he would receive credit against his federal sentence for all the time he spent confined for his state robbery prosecution (roughly six years), even time he spent concurrently confined for other offenses; he now understands he will receive credit only for time he spent confined for the state robbery and no other offense (roughly 806 days). Second, he says he thought that if

the BOP awarded less credit than he thought due, then he would have a meaningful opportunity to appeal; he now says no such opportunity exists.

> These topics came up during the plea colloquy:

> THE COURT: And do you understand that by entering into the plea agreement and entering a plea of guilty, you will be deemed to have given up your rights to appeal and otherwise collaterally challenge your conviction and sentence?

> THE DEFENDANT: Your Honor, will I waive—because I understand that credit for time served is within the exclusive authority of the Bureau of Prisons, and so when the—whenever they calculate the credit for my time served, if they do not credit what I believe should be what I should receive on a credit for time served, will I not be able to appeal or to try to seek any kind of remedy for this?

> THE COURT: I don't know the answer to that question, sir. [Plea counsel], you're acting like you have an answer or response.

> [PLEA COUNSEL]: I do. May I have a moment?

*Id.* at 127–28. Plea counsel then apparently spoke with Mr. Cottingham off the record before the plea colloquy resumed:

> THE COURT: . . . I do believe you are waiving the right to appeal on that basis.

> [Plea counsel], do you have some different—some different opinion of this?

> [PLEA COUNSEL]: I do, Your Honor.

> THE COURT: All right.

> [PLEA COUNSEL]: And I've gone through with my client before on how that would be addressed.

> THE COURT: All right.

> [PLEA COUNSEL]: But the district court does not order credit for time served, that is purely for the Bureau of Prisons, and so credit for time served is not an issue with the district court.

3

THE COURT:  Right.  And so his question is, is he waiving the right to appeal if the issue is decided in a way that he does not agree with by the Bureau of Prisons?

[PLEA COUNSEL]:  And I've explained to him how that would be handled.

*Id.* at 128–29.

After the court went over the appeal waiver with Mr. Cottingham, he requested and received time to speak with plea counsel.  Following a discussion, he told the court that he understood that, by entering his plea, he would waive his right to appeal "as set forth" in the plea agreement.  *Id.* at 131.  The court completed the plea colloquy, and Mr. Cottingham pleaded guilty.

Just ten days after entering his plea, however, Mr. Cottingham asked to withdraw it.  He stated that plea counsel had assured him the law required the BOP to award him nearly six years of credit against his sentence, an assurance he later learned to be false.  He added that plea counsel told him he could appeal an adverse credit decision by the BOP because time credits are not part of the court's sentence.  This advice too, he said, was incorrect.

The court appointed different counsel to represent Mr. Cottingham and eventually held a hearing on his motion to withdraw his plea.  Mr. Cottingham repeated his claim that plea counsel had told him that the BOP would award him nearly six years of credit and that, if it did not, he "could still appeal."  *Id.* at 216.  Plea counsel testified to different events, however, saying that she explained to Mr. Cottingham that he would get credit for time "he had only served on the robbery case."  *Id.* at 227.  She denied that when Mr. Cottingham entered his plea, "he

4

expected that he would get credit for all of the time he had served" for the state robbery, nearly six years. *Id.* at 241–42. She instead understood that he expected to receive credit for "the time he had exclusively served on the robbery that he hadn't gotten credit for on any other case." *Id.* at 241. The court found that Mr. Cottingham entered his plea knowingly and voluntarily, and it denied his motion to withdraw his plea. After sentencing, Mr. Cottingham filed this appeal.

### *Discussion*

We will enforce an appeal waiver if (1) the appeal falls within the waiver's scope, (2) the defendant waived the right to appeal knowingly and voluntarily, and (3) enforcing the waiver would not "result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Mr. Cottingham does not contend that this appeal falls outside his waiver's scope or that enforcing the waiver would cause a miscarriage of justice, so we need not address those issues. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005). We focus on Mr. Cottingham's claim that he did not enter into the plea agreement knowingly. After all, if he did not enter the agreement knowingly, "the appellate waiver subsumed in the agreement also cannot stand." *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014). "Whether a guilty plea was entered knowingly and voluntarily is generally a question of law we review de novo." *Id.* at 1191. Mr. Cottingham has the burden to prove he did not enter his plea knowingly. *See United States v. Jim*, 786 F.3d 802, 810 (10th Cir. 2015).

5

To assess whether a waiver was knowing and voluntary, we typically focus on two factors: "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. These factors weigh decidedly against Mr. Cottingham. He expressly asserted in his plea agreement that he understood his appellate rights and that he knowingly and voluntarily waived them. He further asserted that he understood the agreement and voluntarily agreed to it. And after conducting a thorough plea colloquy, the court found that he entered his plea knowingly and voluntarily.

In the face of the plea agreement and the plea colloquy, Mr. Cottingham's arguments fail to show that he did not enter his plea knowingly. Take first the claim that he (incorrectly) thought he would receive almost six years of credit against his sentence.[1] For one thing, plea counsel testified that she told him he would get credit only for time he had served on the robbery and no other offense.[2] And for another,

---

[1] We do not decide here how much credit Mr. Cottingham should receive against his sentence. We will assume, without deciding, that he is correct when he says the BOP may not give him credit for the entire period he spent confined for the state robbery prosecution. Even if that is true, he has not shown that he did not enter his plea knowingly.

[2] Mr. Cottingham characterizes plea counsel's testimony on this point as "seemingly contradictory." Resp. at 9. We do not see her testimony that way. True enough, she said that when Mr. Cottingham came up with the proposed plea agreement, he expected "to get credit for all the time that he had served on the robbery." R. vol. 1 at 241. But the court then immediately asked what plea counsel understood at the time of the plea hearing. In response, plea counsel denied that

6

Mr. Cottingham expressly said in the plea agreement that no promises or inducements had been made to him except those in the agreement itself, a statement that contradicts his later claim that he "only pled guilty because" his lawyer assured him that the BOP would have to give him nearly six years of credit. R. vol. 1 at 105.

Seeking to tie his argument to the plea agreement, Mr. Cottingham points to the provision saying that his sentence "should run concurrent with time he is already serving in the Oklahoma Department of Corrections for offenses unrelated to the instant offense." *Id.* at 97. But this provision says nothing about credit against the sentence, so it does not support Mr. Cottingham's claim about how much credit he expected.

Nor does the record show that Mr. Cottingham misunderstood the scope of his appeal waiver. He argues that he thought the "plea agreement provided him effective recourse" if the BOP denied him the nearly six years of credit. Resp. at 11. But he does not explain—and the record does not show—what recourse he thought would be available. One thing is clear: He could not have expected recourse through a direct appeal of the district court's sentence, for he himself acknowledged during the plea colloquy that the BOP, not the court, would determine how much credit he received. And the plea agreement leaves no room for the idea that Mr. Cottingham could appeal his sentence if he did not receive the credit he expected.

---

Mr. Cottingham expected to receive credit for nearly six years. She instead understood him to expect credit for "the time he had exclusively served on the robbery that he hadn't gotten credit for on any other case." *Id.* at 242. In its full context, counsel's testimony is clear.

7

Besides, Mr. Cottingham does not argue that his plea agreement restricted his ability to seek review of the BOP's credit decision. In fact, he recognizes that he may seek administrative and judicial review of the BOP's credit decision. *See United States v. Wilson*, 503 U.S. 329, 335–36 (1992). But this review, he says, is "not the type of immediate, direct, and counseled appeal that [he] likely had in mind when he asked if he was preserving his right to appeal."[3] Resp. at 12. Such speculation cannot overcome the statements Mr. Cottingham made in his plea agreement and in court showing that he understood his appeal waiver. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

## *Conclusion*

Mr. Cottingham has not shown that he did not enter his plea knowingly. We grant the government's motion to enforce his appeal waiver and dismiss this appeal.

Entered for the Court
Per Curiam

---

[3] Mr. Cottingham also says it would be futile for him to seek review of an adverse BOP decision because "federal law prohibits the BOP from granting" more than 806 days of credit against his sentence. Resp. at 13. At its core, this argument targets not the adequacy of the available review but instead plea counsel's advice about how much credit Mr. Cottingham could receive under the law. And we have already rejected his claim that a mistaken belief about the credit he would receive prevented him from entering his plea knowingly.